IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

AUG 2 3 2010

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| MARIO DANIEL FLORES and CREATIVE HOLDINGS COMPANY, INC., | § § § § | |
| Plaintiffs, | § § | |
| v. | § | CIVIL ACTION NO. B-08-506 |
| FIRST NATIONAL BANK OF EDINBURG, AURELIO GARZA, MICHAEL McCARTHY, DAVID ROGERS, and MARK CANTU, | § § § § § § | |
| Defendants. | § | |

## OPINION & ORDER

BE IT REMEMBERED that on August 23, 2010, the Court considered Defendants First National Bank of Edinburg ("FNB"), Aurelio Garza ("Garza"), Michael McCarthy ("McCarthy"), and David Rogers ("Rogers") Motion for Summary Judgment (Statute of Limitations), and the responses thereto. Dkt. Nos. 41, 46, 48.

### I. Factual and Procedural Background

On December 15, 2008, Plaintiffs Mario Daniel Flores ("Flores") and Creative Holdings Company, Inc. ("Creative Holdings") filed suit in this Court against FNB, Garza, McCarthy, Rogers, and Mark Cantu ("Cantu"), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961; Dkt. No. 1, at 1-2. This suit is factually related to one initiated on June 5, 2000 by FNB in the 139th Judicial District Court of Hidalgo County, Texas, and in which the current Plaintiffs' counter-claims were dismissed in a final judgment on May 29, 2008. Dkt. No. 41, Ex. A-G; *see also* First Nat'l Bank of Edinburg v. Rio National Bank, No. C-976-00-C (139th Dist. Court, Hidalgo County, Tex. Jun 5, 2000) ("Original Suit").

Plaintiffs allege that Defendants conspired to use their control over Plaintiffs'

1

lending relationship at FNB to destroy Plaintiffs' commercial and residential real estate development and construction business. Dkt. No. 1, at 2. Defendants filed their answer on February 13, 2009, as well as a Motion to Stay or Abstain this case on *Colorado River* grounds. Dkt. No. 9. The Court denied the Defendants' motion. Dkt. No. 10. On December 30, 2008, Cantu filed a suggestion of bankruptcy with this Court to stay all proceedings against him. Dkt. No. 4. The Court stayed all proceedings against Cantu during the pendency of his bankruptcy case. Dkt. No. 10. On April 16, 2009, Defendants filed a Motion for Summary Judgment raising grounds of *res judicata*. On November 6, 2009, the Court denied Defendants' Motion for Summary Judgment. Dkt. No. 33.

On June 17, 2010, Defendants filed the instant Motion for Summary Judgment. Dkt. No. 41. On June 24, 2010 Cantu filed a Motion for Summary Judgment seeking to incorporate Defendants' motion. Dkt. No. 43. On July 6, 2010, Plaintiffs timely filed their response. Dkt. No. 46. On July 22, 2010, Defendants filed a reply to Plaintiffs' response. Dkt. No. 48.

Defendants argue that Plaintiffs' RICO claims are subject to a four-year statute of limitations period. Dkt. No. 41, at 5. Although the limitations period may be tolled in RICO cases, it begins to run when Plaintiffs knew or should have known of their injury. *Id.* (citing Bradley v. Phillips Petroleum Co., 527 F. Supp. 2d 625, 652 (S.D. Tex. 2007). Defendants argue that the uncontroverted evidence demonstrates that Plaintiff knew of its alleged injury by 1997, and therefore the statute of limitations expired on Plaintiff's claims in 2001. *Id.* at 6. Furthermore, Defendants argue Plaintiff is not entitled to equitable tolling of the statute of limitations period, because they have not demonstrated that they used reasonable diligence in investigating their claims. *Id.* at 6-8.

Plaintiffs respond that despite their reasonable diligence, they did not discover the conspiracy until March 2008, when they interviewed and took the affidavit of Abel Luna ("Luna"). Dkt. No. 46, at 2. At that time, Plaintiffs learned of the involvement of Rogers and Cantu in the other Defendants' alleged actions. *Id.* Plaintiffs argue that

2

Defendants wrongfully concealed material facts relating to their wrongdoing from them and the concealment prevented their discovery of the nature of their claim. *Id.* at 3. Plaintiffs argue that the Defendants replaced Garza as the loan officer on his account with Luna, in order to make Plaintiffs believe that Garza was no longer involved in his account. *Id.* at 4. Prior to taking Luna's affidavit, Plaintiffs believed that Luna was the one making the decisions on his account. *Id.*

Defendants reply that Plaintiffs' tolling argument is misplaced. Dkt. No. 48. at 2. Tolling is only applicable if fraudulent concealment prevents the discovery of the injury, not the means of the alleged conspiracy. *Id.* (citing *Bradley*, 527 F. Supp. 2d. at 639-40). Because Plaintiffs discovered their alleged injury in 1997, equitable tolling is inapplicable to this case. Furthermore, Defendants argue that Plaintiff has not presented any evidence that they were prevented from discovering their alleged injury, a necessary requirement for equitable tolling of the statute of limitations. *Id.* at 2-3. Finally, Defendants argue that Plaintiffs have failed to show that they exercised reasonable and due diligence in investigating this claim because they waited six years to interview or depose Luna after listing him as a potential witness in the Original Suit. *Id.* at 3.

## II. Standard for Summary Judgment

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's*, 448 F.3d at 752 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. Factual controversies must be resolved

in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 36 F.3d 1069, 1075 (5th Cir. 1994). Thus, the Court will not, *"in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." Id.* (emphasis in original) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)); *see also* TIG Ins. Co. v. Eagle, Inc., Civ. Action No. 05-0179, 2007 WL 861153, at *2 (E.D. La. 2007) (quoting *Little*, 36 F.3d at 1075).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that no genuine issue of fact exists. *See Lockett*, 337 F. Supp. 2d at 891 (citing Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993)). However, if the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; *see also Ashe*, 992 F.2d at 543. The non-movant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

### III. Statute of Limitations

A defendant asserting the affirmative defense of the expiration of a statute of limitations period bears the burden of proof. Frame v. City of Arlington, 575 F.3d 432,

4

441 (5th Cir. 2009) (citing FED. R. CIV. P. 8). Civil RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 552 (2000). The Fifth Circuit applies the "injury discovery" rule to determine when RICO claims accrue. Under the injury discovery rule, the limitations period runs from the date on which "the plaintiff discovers, or should have discovered, the injury." *Conwill v. Greenberg Traurig, L.L.P.*, 2010 WL 3021553 at *3 (E.D. La. Jul 29, 2010) (quoting *Love v. Nat'l Med. Enter.*, 230 F.3d 765, 773 (5th Cir. 2000)). The limitation period begins to accrue when a plaintiff discovers its alleged injury, not when a plaintiff discovers the other elements of a RICO claim. *Rotella*, 528 U.S. at 555. Plaintiffs are

> not permitted a leisurely discovery of the full details of the alleged scheme. A plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation and is charged with the knowledge of all facts such an investigation would have disclosed.

*Snelling v. Jensen*, 841 F.2d 600, 607 (5th Cir. 1988) (discussing inquiry notice in the context of federal securities claims) (internal citations and quotations omitted).

Federal courts recognize the equitable doctrine of fraudulent concealment, which may toll the statute of limitations. *Astoria Entertainment, Inc. v. Edwards*, 159 F. Supp. 2d 303, 316 (E.D. La. 2001). A plaintiff

> may invoke the fraudulent concealment doctrine only by proving two elements: first, that the defendants concealed the conduct complained of, and second, that the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim.

*Id.* (quoting *State of Texas v. Allan Construction Company, Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988)). "Concealment by defendant only by silence is not enough. [The defendant] must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry." *Allan Construction*, 851 F.2d at 1529 (quoting *Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir. 1958) However, if the underlying wrong is "self-concealing," like fraud, the plaintiff need not show affirmative acts. *Id.* Furthermore, a plaintiff must exercise reasonable diligence to discover the facts

forming the basis for the claim. *Id.* at 1533; *see also* Klehr v. A.O. Smith Corp., 521 U.S. 179, 194 (1997). Moreover, the plaintiff need not have actual knowledge of such facts; "[t]hose who have learned of facts 'calculated to excite inquiry' must inquire." *Id.*

### III. Evidence

In support of their Motion for Summary Judgment, Defendants submit the following evidence: (1) the docket sheet and copies of some of the pleadings from the Original Suit; and (2) the affidavit of Abel Luna, which was secured by Plaintiffs in March 2008. Dkt. No. 41, Ex. A-G. Plaintiffs supplement their response with a declaration of Flores, who states that he did not have actual knowledge of the facts underlying his current case until Luna's affidavit. Dkt. No. 46, Ex. 2.

### V. Analysis

The Plaintiffs filed the current suit on December 15, 2008. In order for the Defendants to succeed on their motion for summary judgment on their affirmative defense, there must be no genuine issue of material fact must that the statute of limitations on Plaintiffs' RICO action must have begun to run prior to December 14, 2004.

The Court holds that no genuine issue of material fact exists whether the Plaintiffs discovered their injury prior to December 14, 2004. First, Plaintiff's alleged injury in this suit is the loss of "their property and their entire business." Dkt. No. 1, at 14. Analyzing the Complaint, Plaintiffs allege they first lost property in August 1999, when as a result of the conspiracy, they were required to transfer some of the property that he had previously owned, subject to the FNB security interest, to a new corporation which was owned equally by Cantu and Flores. *Id.* at 5-6. By October 5, 2000, Plaintiffs had sold their entire interest in the property to Cantu. *Id.* at 8. Therefore, unless Plaintiffs' discovery of their injury was equitably tolled, the statute of limitations had expired before the filing of the current suit.

Although Plaintiffs would bear the burden of proof of fraudulent concealment at trial, in order to be entitled to summary judgment, Defendants must show that Plaintiffs have failed to create a genuine issue of material fact (1) that Defendants

concealed Plaintiffs' claim and (2) that Plaintiffs diligently pursued their claim.

The Court holds that Plaintiffs have failed to create a genuine issue of material fact as to whether Defendants concealed Plaintiffs' claim from them. First, Plaintiffs allege in their complaint that the beginning of the conspiracy was Garza's attempts beginning in 1997 to seek bribes and kickbacks from Plaintiffs in exchange for the ability to draw on their line of credit from FNB. Dkt. No. 1, at 3. These actions were known to Plaintiffs at the time they occurred. Furthermore, by mid 1999, Plaintiffs knew Garza had allegedly cut off Plaintiffs' financing, draws, and advances, which Plaintiffs believed to be to "teach [Plaintiffs] a lesson" for cutting off their bribes to Garza. *Id.* at 5. By October 5, 2000, Cantu had informed Plaintiffs that rather than buying the remaining lot owned by Plaintiffs, he had been told by FNB to wait until they foreclosed on the lot to purchase it at a much lower price. Rather than affirmatively concealing the facts of Plaintiffs' RICO claim, Defendants appeared to shout them from the rooftops. Although some of the details of the alleged conspiracy may not have been known by the Plaintiffs, the Plaintiffs were put on notice of their claims well prior to December 14, 2004.

Furthermore, Plaintiffs had raised their counterclaims in the Original Suit raising essentially their same claims they make in this suit. Plaintiff Creative Holdings filed their original counterclaim in the Original Suit on May 10, 2002. Dkt. No. 41, Ex. 8, at 2. In it, Creative Holdings summarized the history of its dealings with the property, and alleged that FNB had "violated various tort duties" owned to Creative and sought damages for lost profits and damage to Creative Holdings' reputation. *Id.*, Ex. 5, at 9. Therefore, the uncontroverted evidence indicates that Plaintiffs had discovered the conspiracy prior to December 14, 2004.

Furthermore, the event that Plaintiffs present as the point they "discovered" their claims is nonsensical. Plaintiffs argue that prior to the interview of Luna and his subsequent affidavit in March 2008, Plaintiffs did not know that Luna was not really his loan officer at FNB and it "used him to make me think that Garza was no longer involved with my account". Dkt. No. 46, Ex. 2, at 4. However, Creative Holdings

allege in its Third Amended Counterclaim in the Original Suit, filed June 26, 2007, that "FNB initially appointed Abel Luna as the loan officer, although later Flores discovered that Garza had convinced his bosses at FNB to let him take over the loan." Dkt. No. 41, Ex. A, at 7. It is impossible that Plaintiffs discovered a fact in March 2008 that it already knew in June 2007. Therefore, the Court holds that Plaintiffs have failed to create a genuine issue of material fact whether their discovery of their claim was concealed by Defendants.

Finally, even if the Court assumed that the facts of Plaintiffs' claim were concealed from them until after December 14, 2004, the uncontroverted evidence is clear that Plaintiffs did not act with reasonable diligence in pursuing their claim. By 2000, when the Original Suit was initiated, Plaintiffs had ample evidence that should have put them on notice of their alleged conspiracy. The pleadings from this case as well as the Original Suit allege that by then, Plaintiffs knew they had been the victim of a shakedown, that FNB had sought to accelerate their loan repayments and foreclose on their property, and that FNB was conspiring with Flores to deprive Plaintiffs of their interest in their property. See Dkt. No. 41, Ex. A; Dkt. No. 1. Any reasonable plaintiff should have known to diligently investigate the relationship between the Defendants prior to June 5, 2000.

## VI. Conclusion

Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment. Dkt. No. 41. As a result, the Court will enter a separate order dismissing Defendants First National Bank of Edinburg, Aurelio Garza, Michael McCarthy, and David Rogers from this case.

DONE at Brownsville, Texas, on August 23, 2010.

Hilda G. Tagle
United States District Judge